

**IN THE UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN J. HALL and JEANETTE A. HALL,** as Administrators and Personal Representatives of the **ESTATE OF KARLIE A. HALL,** and in their own right as Decedent's heirs-at-law<br><br>        **Plaintiffs,**<br>   **v.**<br><br>**MILLERSVILLE UNIVERSITY, SARA WIBERG,** individually and as an employee of Millersville University, **ACACIA NATIONAL FRATERNITY, ACACIA FRATERNITY CHAPTER NUMBER 84, COLIN HERBINE,** individually and as an agent of Acacia National Fraternity and Acacia Fraternity Chapter No. 84, **JACK MILITO,** individually and as an agent of Acacia National Fraternity and Acacia Fraternity Chapter No. 84, **NICHOLAS HENCH,** individually and as an agent of Acacia National Fraternity and Acacia Fraternity Chapter No. 84, **SEAN EBERT,** individually and as an agent of Acacia National Fraternity and Acacia Fraternity Chapter No. 84, **NIGALE QUILES,** individually and as an agent of Acacia National Fraternity and Acacia Fraternity Chapter No. 84; and **JOHN DOES # 1-5,** individually and as agents of Acacia National Fraternity and Acacia Fraternity Chapter No. 84<br><br>        **Defendants** | **Case Number:**<br><br>17   0220<br><br>**Jury Trial Demanded** |

1

## COMPLAINT – CIVIL ACTION

AND NOW, comes Plaintiffs, John J. Hall and Jeanette A. Hall, administrators of the Estate of Karlie A. Hall, decedent, and in their own right as Decedent's heir-at-law, by and through their attorneys Laffey, Bucci & Kent, LLP file the following complaint in civil action and in support thereof avers the following:

### I.      VENUE AND JURISDICTION

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives the federal district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.      This court has supplemental subject matter jurisdiction over all related state claims herein pursuant to 28 U.S.C. § 1367, which gives the federal district courts jurisdiction over all other claims related to claims in the action by which the Court has original jurisdiction that are arising out of the same case or controversy under Article III of the United States Constitution.

4.      Plaintiffs bring this action to redress a hostile educational environment where Plaintiffs' daughter and named decedent, Karlie A. Hall, was subjected to sexual harassment and has standing to bring forth her claim pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, as set forth more fully herein.

5.      This is also an action to redress the deprivation of the decedent's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C § 1983.

6.      Plaintiffs also seek redress under the Pennsylvania common law theories of negligence and negligence per se against the private Defendants.

7.      Venue is proper in this district pursuant to 28 U.S.C § 1391(b), since all defendants reside or resided in this district and/or the events giving rise to the claims occurred in this district.

## II.      PARTIES

8.      Plaintiff, Jeanette A. Hall, is an adult individual residing at 695 Bayard Rd., Kennett Square, 19348 in the Commonwealth of Pennsylvania.  Plaintiff may be contacted through her counsel as outlined herein. Plaintiff is also the mother of decedent, Karlie A. Hall. Furthermore, Plaintiff, Jeanette A. Hall is an Administrator for The Estate of Karlie A. Hall.

9.      Plaintiff, John J. Hall, is an adult individual residing at 18631 Belmont Dr., Cuttler Bay, Florida 33157. Plaintiff may be contacted through his counsel as outlined herein. Plaintiff is also the Father of decedent, Karlie A. Hall. Furthermore, Plaintiff, John Hall is an Administrator for The Estate of Karlie A. Hall.

10.      Defendant Millersville University is a public university located at 1 South George St., Millersville, Pennsylvania 17551 and a recipient of federal financial assistance.

11.      Defendant Sara Wiberg, at all relevant times, was a student and Resident Assistant at Bard Hall on the Millersville University campus, resides at 32980 Blackwell Blvd., Lake Elsinore, California 92530. Defendant Wiberg was and is, at all relevant times herein, an agent, employee, and representative of Millersville University.

12.      Defendant Acacia National Fraternity, is a national men's college fraternity located at 8777 Purdue Road, Suite 225, Indianapolis, Indiana, 46268 and the parent organization to the Millersville University Chapter.  Said defendant derives income from 34 active chapters across the United States, including Chapter Number 84, Millersville University.

13.      Defendant Acacia Fraternity, Millersville Chapter (No. 84), is a local chapter of the Acacia National Fraternity on the Millersville University Campus located at 351 North George Street, Millersville, Pennsylvania, 17551.  Defendant Acacia Fraternity Millersville is at all times herein an affiliate and representative of Defendant Acacia National Fraternity.

14.      Defendant, Colin Herbine, at all times relevant hereto was an adult individual and student at Millersville University residing at 735 Cedar Hill Road, Ambler, PA  19002. At all times relevant hereto, it is believed an averred that Defendant was an active member of the Acacia National Fraternity and Acacia Fraternity Local Millersville Chapter, No. 84, and is further believed that Defendant was the Chapter Advisor for Acacia Fraternity Local Millersville Chapter, No. 84.

15.      Defendant, Jack Milito, at all times relevant hereto was an adult individual and student at Millersville University residing at 1303 Hillview Avenue, Apt. C, Millersville, PA

4

17551. At all times relevant hereto, it is believed an averred that Defendant was an active member of the Acacia National Fraternity and Acacia Fraternity Local Millersville Chapter, No. 84, and is further believed that Defendant was the Human Services representative for Acacia Fraternity Local Millersville Chapter, No. 84.

16.      Defendant, Nicholas Hench, at all times relevant hereto was an adult individual and student at Millersville University residing at 8 Raspberry Drive, Mechanicsburg, PA  17050 At all times relevant hereto, it is believed an averred that Defendant was an active member of the Acacia National Fraternity and Acacia Fraternity Local Millersville Chapter, No. 84, and is further believed that Defendant was the Venerable Dean for Acacia Fraternity Local Millersville Chapter, No. 84.

17.      Defendant, Sean Ebert, at all times relevant hereto was an adult individual and student at Millersville University residing at 85 West Frederick Street, Apt. C, Millersville, PA 17551. At all times relevant hereto, it is believed an averred that Defendant was an active member of the Acacia National Fraternity and Acacia Fraternity Local Millersville Chapter, No. 84, and is further believed that Defendant was the Junior Dean and Human Relations Chair for Acacia Fraternity Local Millersville Chapter, No. 84.

18.      Defendant, Nigale Quiles, at all times relevant hereto was an adult individual and student at Millersville University residing at 1133 Jamaica Road, Lancaster, PA  17602. At all times relevant hereto, it is believed an averred that Defendant was an active member of the Acacia National Fraternity and Acacia Fraternity Local Millersville Chapter, No. 84, and is further believed that Defendant was the Health and Wellness Chair for Acacia Fraternity Local Millersville Chapter, No. 84.

19.     Defendants, John Does #1-5, at all time relevant hereto are adult individuals and were/are students at Millersville University who were/are members of the Acacia National Fraternity and Acacia Fraternity Local Millersville Chapter, No. 84. Plaintiffs are unable to discern the names of said individuals at this time because Plaintiff do not have an active member list of Acacia Fraternity members for the relevant time period.

20.     The members of Acacia referenced herein will collectively be referred to as "the Fraternity members."

**III.    FACTUAL BACKGROUND**

21.     The factual circumstances that are the basis of the complaint involve the horrid and brutal abuse of decedent, Karlie A. Hall, by her boyfriend on Defendant Millersville University's campus while she was a freshman student at the Millersville University and living in Millersville University residential housing.

22.     On-campus domestic, sexual, and/or dating abuse is a national epidemic that threatens the safety of students throughout the country and the threat was known to all Defendants named herein at the time of decedent's abuse up to the time and date of decedent's death. Decedent's horrid abuse and ultimate death could have been prevented had all Defendants named herein appropriately used their authority to report, respond, and/or investigate at least two prior assaults known to Defendants at the time of decedent's death.

23.     In or around October 5, 2014, decedent Karlie Hall was enrolled as a full time first-year student at Millersville University majoring in business.

6

24.     In or around October 5, 2014, Karlie Hall was living in Room 217 in Bard Hall, a residential dormitory on Millersville University's campus located at 60 Brooks Drive, Millersville, Pennsylvania 17551.

25.     Upon information and belief, Bard Hall, at all relevant times, was one of six (6) residential buildings owned and operated by Millersville University that houses approximately 2,214 undergraduate students, including the decedent, Karlie Hall.

26.     Upon information and belief, Millersville Resident Housing, including Bard Hall, is managed by graduate students who supervise a staff of resident assistants who are assigned to each resident wing or floor with a graduate student ratio of 1:30.

27.     Pursuant to the Campus Right to Know Act, Millersville University Resident Assistants, who manage individual wings and/or floors in Millersville Resident Housing facilities, are designated campus security authority.

28.     Pursuant to applicable law, those designated with campus security authority have the duty to act or respond to particular issues on behalf of Millersville University, including reports of sexual and physical violence and dating abuse.

29.     Upon information and belief, at Millersville University, the following titles have been recognized as campus security authorities in addition to all sworn members of the Millersville Police Department:

    a.     Vice President for Student Affairs and Enrollment Management, all subordinate administrators, and all division staff, excluding clerical staff;

    b.     all athletic coaches and assistant coaches;

    c.      Title IX Coordinator and subordinate non-clerical staff;

    d.      Associate Vice President for Human Resources and subordinate non-clerical staff;

    e.      advisors to any student group; and

    f.      employees of the University **including Residence Hall Assistants** and Peer Educators.

30.      In or around October 5, 2014, decedent, Karlie Hall was engaged in romantic and/or intimate relationship with Gregorio Orrostieta, an adult individual and not a registered student of Millersville University.

31.      In or around October 3, 2014 through October 5, 2014, Gregorio Orrostieta was an overnight guest at a residential dormitory on Millersville University's campus – Bard Hall.

32.      During this visit, the Bard Hall Residential Assistant, Sara Wiberg, had knowledge that a non-student, Gregorio Orrostieta, was in a relationship with decedent and resident-student Karlie Hall and was staying as an overnight guest in the dormitory.

33.      In or around October 5, 2014, the residential assistant in charge of decedent Karlie Hall's floor, Sarah Wiberg, witnessed decedent crying and attempted to speak with decedent's roommate about Karlie's emotional state.

34.      During that time, a physical altercation erupted between Orrostieta and Karlie Hall.

35.      The Bard Hall resident assistant – an employee and campus security authority – attempted to break up the altercation and asked Orrostieta to leave the residential dormitory premises with which she had the authority to use, to which Orrostieta refused.

8

36.        It is believed and averred that after refusing to leave the premises, the Bard Hall residential assistant, Sara Wiberg, notified the Millersville University Police of the ongoing situation.

37.        Thereafter, upon information and belief, Millersville University Police entered Bard Hall, discussed the situation with the residential assistant and Orrostieta in the lobby of Bard Hall; moreover, it is believed that the Millersville University Police did not speak nor contact Karlie Hall concerning this specific instance of abuse.

38.        The primary responsibility for security on campus belongs to the Millersville University Police Department.

39.        The Pennsylvania Administrative Code, Section 2416, grants full police power to commissioned police officers employed by Millersville University; and therefore, Millersville police have the power and duty to protect life and property, make arrests, conduct investigations, and exercise the same powers authorized for police in other local municipalities.

40.        When an incident occurs on campus, Millersville University Police have the duty to investigate and coordinate with appropriate area law enforcement agencies.

41.        Following the physical altercation between decedent Hall and Orrostieta, Millersville University Police took custody of Orrostieta and escorted him out of Bard Hall.

42.        It is averred that Millersville University Police, as employees of Millersville University and appropriate campus security authorities, should have conducted a full investigation and report of the domestic abuse that occurred in or around October 5, 2014 between Orrostieta and decedent Hall.

43.     Upon information and belief, the Millersville University Police did not conduct any investigation nor did they report or inform Karlie Hall's parents about the physical altercation between Orrostieta and decedent Karlie Hall; rather, and inexplicably, the Millersville University Police gave custody of Orrostieta to a guardian and let him return home even though there was evidence of an assault by Orrostieta on decedent Karlie Hall.

44.     It is believed and averred that another incident occurred between Orrostieta and Karlie Hall in or around January of 2015.

45.     Specifically, in or around January of 2015, approximately two weeks prior to Karlie Hall's death, Orrostieta once again came on to Millersville's campus and entered in the resident dormitory, Bard Hall, on Millersville University's campus where Karlie Hall lived.

46.     During Orrostieta's visit, upon information and belief, decedent Karlie Hall suffered another abuse where she fractured her orbital bone. Said assault was never reported nor investigated by the Bard Hall resident assistant or the Millersville University Police.

47.     Soon thereafter, Plaintiff Jeanette Hall contacted the Millersville University Police department and inquired whether or not the Police had conducted an investigation of decedent Karlie Hall's injuries pertaining to the January assault and/or assaults against Karlie Hall in general.

48.     It is believed and therefore averred that Plaintiff Jeanette Hall inquired as to whether the Millersville University Police kept files of prior assaults to which a representative of the Millersville University Police department answered in the affirmative; however, there was no file on record of prior assaults on decedent Karlie Hall, including any information regarding the October 2014 assault.

10

49.     As a result of the January 2015 assault and injuries, Karlie Hall was forced to return home and was absent for an entire week of classes.

50.     It is further believed and averred that the Millersville University Police did not conduct an investigation into any possible assault on decedent Karlie Hall in January or February of 2015.

51.     It is believed an averred that had the Millersville Police conducted a proper investigation on both the October 2014 and January 2015 incidents, Millersville University Police would have investigated, reported, and/or discovered the actions of Gregorio Orrostieta and consider him a threat to decedent, Karlie A. Hall; however, this did not occur.

52.     The failure to investigate and report viable evidence of assault on behalf of Defendant by and through the failures of the Millersville University Police and Bard Hall resident assistant resulted in Gregorio Orrostieta's ability to freely enter decedent Karlie Hall's residential dormitory without interruption or investigation multiple days in February of 2015, ultimately leading to the tragic homicide of decedent Karlie Hall at the hands of Orrostieta on or around February 8, 2015.

53.     Upon information and belief, Gregorio Orrostieta once again became an overnight guest of decedent Karlie Hall in her residential dormitory on Millersville University's campus between approximately February 5, 2015 and February 8, 2015.

54.     Upon information and belief, Millersville University permits guests in the residential dorms. However, the University and guests must follow specific policies regarding overnight stays; specifically:

a.     All guests must register and must be at least 18 years of age. If guests are under the age of 18, their resident host(s) must secure a guest exception through the Area Coordinator/Resident Hall Director;

b.     Guests must register during front desk hours of operation and their resident host must be present when they check in and out;

c.     All guests are required to carry a guest pass provided to them and guests must return their guest pass when they check out; and

d.     Guests must present valid photo identification at the front desk prior to entering the building.

55.     It believed and averred that during Orrostieta's stay from approximately February 5, 2015 through February 8, 2015, Orrostieta freely entered Bard Hall and registered with Residential Housing authorities as a guest.

56.     It is further believed and averred that the same residential assistant that knew of Orrostieta's prior assaults on decedent Karlie Hall permitted Orrostieta to access Bard Hall, and more specifically, Decedent's room.

57.     It is believed and thereafter averred that Gregorio Orrostieta freely entered and exited Millersville University residential dormitory Bard Hall throughout his stay in February of 2015.

58.     It is further believed and averred that on February 7, 2015, Greogrio Orrostieta attended a party at the Acacia Fraternity Local Millersville Chapter, No. 84, house located on 351 North George Street in Millersville Borough. Decedent Karlie Hall also attended the party.

59.     It is believed and averred that the Fraternity Members of the Acacia National Fraternity, Acacia Fraternity Local Millersville Chapter, No. 84 invited decedent Karlie Hall and Gregorio Orrostieta into the fraternity house, charged them five dollars ($5.00 USC) to enter and consume alcohol, and then supplied and served Orrostieta, a minor, alcohol and/or other illegal substances in violation of 18 Pa.C.S. § 6310.1 and Pennsylvania Liquor Code Title 47 Section 491.1 while Orrostieta was visibly intoxicated.

60.     In or around February 7th or 8th, 2015, Orrostieta physically and verbally assaulted decedent Hall at the Acacia National Fraternity, Acacia Fraternity Local Millersville Chapter, No. 84, house located on 351 North George Street in Millersville Borough.

61.     It is believed an averred that Orrostieta grabbed decedent Hall, physically assaulted her, shoved her, and pinned her against a wall.

62.     It is believed and therefore averred that Fraternity Members of the Acacia Fraternity Local Millersville Chapter, No. 84 witnessed the assault by Orrostieta and did not intervene; call the police; or otherwise assist decedent Karlie Hall by any means.

63.     Following the assault, the Fraternity members continued to serve a visibly intoxicated minor, Orrostieta, alcohol at the Acacia Fraternity House.

64.     It is further believed and averred that the Fraternity members shockingly, deplorably, and preposterously permitted Orrostieta to follow decedent Karlie Hall back to her dorm after witnessing Orrostieta assault Karlie Hall in their house that night.

65.     At approximately 1:30 am on February 8, 2015, Hall returned to her residential dormitory in Bard Hall where Orrostieta followed therein and freely entered the building past the residence check-in desk without interruption; whereas dormitory resident employees, including

13

Resident Assistant should have stopped and called the police due to the physical intoxication of Orrostieta and Hall.

66.     Upon their return, it is believed and averred that Orrostieta attempted to engage in sexual relations with decedent Hall, but Hall denied Orrostieta's advances.

67.     Upon information and belief, thereafter Orrostieta physically and uncontrollably shoved decedent Hall on the ground and struck her with his hand in her face.

68.     It is believed and averred that at approximately 2:00 am on February 8, 2015, Tanyia Kelsey, a resident of room 215 in Bard Hall, and other occupants in the room next to decedent Hall's room, heard furniture being moved, banging against the floor and walls, and further heard decedent Karlie Hall scream for "Help!" multiple times.

69.     Upon hearing Karlie Hall being assaulted by Orrostieta in her dorm room, Kelsey immediately went and informed the Bard Hall resident assistant responsible for the floor, Sara Wiberg, the same resident assistant who had knowledge of Orrostieta's prior domestic and dating abuse of decedent Hall in October 2014 and January 2015.

70.     Soon thereafter, Wiberg, an appropriate campus security authority figure with the responsibility to investigate and report possible violations of law and school policy, proceeded to knock on decedent Karlie Hall's door but turned away and went back to her room after no one responded, and did so having knowledge that Orrostieta had previously abused the decedent on multiple occasions and with knowledge of reports of a physical altercation that night and cries for "help" from Karlie Hall.

71.      It is believed and therefore averred that Orrostieta was strangling decedent during the time that Resident Assistant Wiberg was knocking on decedent's door and therefore was unable to respond or otherwise protect herself.

72.      No further action was taken by Millersville University, University police, Resident Assistant Sarah Wiberg, or any other person to save decedent Hall.

73.      At approximately 5:20 am, Officers of the Millersville University Police and the Millersville Borough Police department responded to Millersville University Residence Bard Hall room 217 for a reported cardiac arrest and entered the room to discover Karlie Hall unresponsive on the dormitory floor while Gregorio Orrostieta was kneeling over her body.

74.      At that time, the police indicated that it was apparent that Karlie Hall had been involved in a physical altercation as her body showed signs of bruising, was cold to the touch, her joints were stiff with rigor, and blood was observed around her face.

75.      It is believed and therefore averred that Karlie Hall's manner of death was ruled a homicide and that the cause of death was strangulation.

76.      The Millersville University Police attempted to speak with Orrostieta and noticed that he had blood on his shirt, a laceration on his forehead, his shirt was ripped, and that he had visible scratch marks on his chest – the blood on his body appeared to be dried.

77.      It is believed and averred that an investigation by the Millersville University Police Department and the Millersville Borough Police Department and autopsy indicated signs of vaginal bruising on Karlie Hall's body and that it was apparent that Gregorio Orrostieta was in a physical altercation with decedent Hall as well as sexually assaulting her.

78.     On May 2, 2016, a Lancaster county jury found Gregorio Orrostieta guilty of third-degree murder and he was sentenced to 20 to 40 years in prison.

79.     It is clear that Millersville University, by and through the actions of the Millersville University Police and Resident Assistant failed to protect decedent Karlie Hall from a dangerous and known abuser.

80.     As a direct result of the deliberate indifference of defendants named herein, Karlie Hall was subjected to horrific abuse and torture which ultimately resulted in her death.

81.     The Millersville Defendants acted recklessly and with a deliberate indifference by failing to conduct adequate investigations concerning the domestic and dating abuse suffered by decedent Karlie Hall; failing to report and inform necessary University officials including Residential Housing Authorities, the Millersville Borough Police Department, on-campus Sexual and Domestic Abuse officials, about the multiple incidents of abuse witnessed by sanctioned Millersville University campus security authorities; and deliberately taking no action to further investigate and ensure decedent Karlie Hall's safety having knowledge that Gregorio Orrostieta, decedent's intimate partner, had physically abused Hall in the past, among other things.

82.     At all times relevant hereto, Millersville and their employees were acting under color of state law, and their conduct was an ongoing course of conduct.

83.     The conduct of Millersville University toward Karlie Hall in unilaterally and affirmatively failing to conduct adequate investigations concerning the domestic and dating abuse suffered by decedent Karlie Hall; failing to report and inform necessary University officials including Residential Housing Authorities, the Millersville Borough Police Department, on-campus Sexual and Domestic Abuse officials, about the multiple incidents of abuse witnessed

16

by sanctioned Millersville University campus security authorities; and deliberately taking no action to further investigate and ensure decedent Karlie Hall's safety having knowledge that Gregorio Orrostieta, decedent's intimate partner, had physically abused Hall in the past, among other things and their failure to follow their statutory duties afterwards shocks the conscience and was outrageous.

84.      Defendant Millersville University acted with gross negligence, wanton and willful misconduct, and/or with deliberate indifference toward Karlie Hall and her federal constitutional rights.

85.      Karlie Hall's physical and sexual abuse and ultimately, her death, was a foreseeable and direct result of Millersville University's actions in unilaterally and affirmatively failing to investigate and report the domestic and dating physical abuse witnessed and suffered by Karlie Hall in October of 2014; failing to properly investigate possible abuse of Karlie Hall by Orrostieta in January of 2015 when there was evidence of physical abuse; and deliberately taking no action to further investigate and ensure decedent Karlie Hall's safety on February 8, 2015 having knowledge that Gregorio Orrostieta, decedent's intimate partner, had physically abused Hall in the past where witnesses heard loud movement in Hall's room and multiple screams for "help!"

86.      As a direct and proximate result of the Defendants' actions alleged herein, Karlie Hall experienced extreme physical and mental pain, the loss of her ability to enjoy the pleasures of life and ultimately the loss of her life. Defendants' misconduct was a substantial factor in bringing about Karlie Hall's harm and death.

87.     The Millersville Defendants herein violated Karlie Hall's clearly established and well settled federal constitutional rights, including the right to life, liberty and personal security.

## COUNT ONE – 20 U.S.C. § 1681 (TITLE IX): DELIBERATE INDIFFERENCE
## PLAINTIFFS v. MILLERSVILLE UNIVERSITY AND SARA WIBERG

88.     Plaintiffs incorporate paragraphs one (1) through eighty-seven (87) as if set forth fully herein.

89.     Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., provides, in relevant part, that no person in the United States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

90.     If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment.

91.     A federal funding recipient may be held liable for the harassment of a victim when the recipient exercises substantial control over the harasser and the context in which the harassment occurs. For example, if the continued harassment occurs on campus or within the confines of a residential dormitory.

92.     Student harassment is not limited to the actual acts of harassment committed by one student against another, but rather a funded party may be held liable under Title IX for peer harassment if the receiving party exercises sufficient control over the circumstances of the abuse.

93.     While a recipient school cannot be held vicariously liable for the specific acts of sexual harassment or violence, they can instead be held liable under Title IX for their own conduct.

94.     Sexual harassment is a form of discrimination for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., and Title IX proscribes harassment with sufficient clarity to serve as a basis for a damages action. Moreover, an implied private right of action exists under Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., and money damages are available in such suits.

95.     Upon information and belief, Millersville University is a recipient of federal education funding.

96.     As stated above, in or around October 3 through 5, 2014, Orrostieta was an overnight guest in Millersville University's Residential Dormitory Bard Hall.

97.     During this visit, the Bard Hall Resident Assistant, Defendant Sara Wiberg, had knowledge that Orrostieta was an overnight guest in the residence hall and, more importantly, became aware of an incident of physical dating abuse between the decedent and Orrostieta, namely, Orrostieta physically assaulting decedent.

98.     Defendant Wiberg, in her capacity as Resident Assistant and as an appropriate person with the authority to take corrective action as an agent and employee of Millersville University, asked Orrostieta to leave the residence hall, and when he refused to do so, notified Millersville University Police of the ongoing situation.

99.     Millersville Police then took custody of Orrostieta and escorted him out of Bard Hall.

100.    The Millersville Police and Resident Assistant Wiberg failed to conduct any further investigation or file a report of the domestic abuse that occurred when there was clear

evidence of abuse; an act and/or misuse of authority that rises to the level of deliberate indifference to the harassment of which they had actual knowledge.

101.     Another physical altercation occurred between decedent and Orrostieta in late January of 2015 where decedent received a fractured left eye socket.

102.     Decedent's mother, Plaintiff, reported this incident to the Millersville Police who took no further action regarding the incident and informed Plaintiff that there were no other reports of abuse on decedent, Karlie Hall.

103.     Decedent missed an entire week of classes as a result of the January abuse.

104.     The failure to investigate and complete an incident report rises to the level of deliberate indifference by allowing Orrostieta continued access to the residence halls and decedent herself.

105.     Pursuant to the Millersville University campus housing policy, Orrostieta would have been required to register and sign in at the front desk before entering the dorm on both prior occasions.

106.     On the weekend of February 5, 2015, Orrostieta was again permitted to freely be on campus and enter the on-campus dormitory, including decedent's room.

107.     On the night of February 7th and early morning of February 8, 2015, it is believed and averred that Orrostieta attended a party at the Acacia Fraternity Local Millersville Chapter, No. 84, and consumed alcohol and or other illegal substances provided and served to him by Fraternity members at the party while Orrostieta was visibly intoxicated and a minor.

108.    At approximately 1:30 am on February 8, 2015, decedent returned to her room in Bard Hall where Orrostieta followed and freely entered the building, going past the residence check-in desk without interruption.

109.    When Orrostieta entered decedent's room, it is believed and averred that Orrostieta attempted to engage in sexual relations with decedent to which she protested.

110    Upon information and belief, Orrostieta proceeded to physically assault decedent throwing decedent to the floor and striking her in the face with his hand.

111.    It is believed and averred that Resident Assistant Wiberg was notified of several loud bangs and screams coming from decedent's dorm room, but when she knocked on the door and no one answered, she went back to her room and made no further inquiries or reports regarding the situation at that time.

112.    It is believed and therefore averred that Orrostieta was strangling decedent during the time that Resident Assistant Wiberg was knocking on decedent's door and therefore was unable to respond or otherwise protect herself.

113.    Sometime between the hours of 2:00 am and 5:00 am, it is believed and averred that Orrostieta murdered decedent Karlie Hall in her dorm room.

114.    It is believed and therefore averred that autopsy reports showed signs of vaginal bruising on decedent's body, evidencing a sexual assault occurring on the night of the murder.

115.    The deliberate indifference, omissions, and failures to act described above caused decedent to suffer sexual abuse and domestic violence by Orrostieta, ultimately resulting in her death.

21

116.     Millersville University, by and through the acts of employees and agents including Millersville Police and Resident Assistant Sarah Wiberg, had a duty to protect the life, liberty, and property of Karlie Hall, and because of its failure to take remedial measures with regards to the known instances of abuse by Orrostieta and restrict his access to campus facilities, decedent was murdered.

117.     Millersville University, by and through the acts of employees and agents including Millersville Police and Resident Assistant Sarah Wiberg, failed to comply with Title IX by failing to take ANY action with regards to prior reports of violence and abuse by Orrostieta and continued to allow him to access the school dormitories and facilities where he had the opportunity to continue the domestic violence and ultimately sexual assault and murder of Karlie A. Hall.

118.     As a direct and proximate cause of the affirmative acts of Millersville University and its employees and agents that rise to such a level of deliberate indifference, decedent suffered severe physical injuries, loss of life, emotional trauma, and monetary damages as a direct result of Millersville's failures in violation of her constitutional rights.

119.     Decedent's injuries were severe, pervasive, and objectively offensive, and as a direct result of Millersville's acts and omissions, experienced a complete loss of educational benefits and opportunities afforded to her by the University.

**COUNT TWO – 42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS VIOLATION OF FOURTEENTH AMENDMENT RIGHTS AND STATE-CREATED DANGER PLAINTIFF v. MILLERSVILLE UNIVERSITY AND SARA WIBERG**

120.     Plaintiff incorporates paragraphs one (1) through one hundred and nineteen (119) as if set forth fully herein.

121.     Millersville University, along with the other Millersville University agents and employees, acting in concert under color of law, denied Karlie Hall her rights under the Fourteenth Amendment to the United States Constitution, including her right to life, liberty and personal security to be free from arbitrary government action that is deliberately and recklessly indifferent and shocks the conscience, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983.

122.     The danger created by the Millersville Defendants, by the affirmative powers granted by state and federal law, was foreseeable and direct in that the Millersville Defendants knew that domestic, sexual, and/or dating violence is a foreseeable and very real threat to the safety and well-being of college students, especially young women including decedent, Karlie Hall.

123.     The Millersville Defendants knew that domestic, sexual, and/or dating violence is especially a foreseeable and very real danger to those forced to live in University housing, including Bard Hall, and that having adequate, appropriate, and necessary policies and procedures for protecting resident-students from abuse by third-parties is not only required by law but essential to the safety and well-being of resident-students and that failing to appropriately train and require resident assistants and university police to respond, investigate, and/or report three instances of domestic, sexual, and/or dating abuse from a third-party would result in serious bodily injury harm or death.

124.     The environment affirmatively created by the Millersville Defendants established a peculiar and special environment with Plaintiffs' decedent, Karlie Hall while she was a resident-student at the University who was not free to reside off-campus and simultaneously remain in school.

125.    It is believed and averred that the Millersville Defendants require all full-time undergraduate students with less than sixty (60) hours of attempted credits to live on campus in one of the Millersville University on-campus residential housing facilities, including Bard Hall, in doing so, the Millersville Defendants created a special environment where the Millersville Defendants undertook a legal and constitutional responsibility by means of policies and procedures to protect the health and safety of its student-residents, including decedent Karlie Hall from dangers which were known or should have been known to the Millersville Defendants.

126.    The affirmative acts of the Millersville Defendants, particularly intervening in a known incident of sexual, domestic, and /or dating violence in or around October 5, 2014 in Bard Hall committed by Gregorio Orrostieta on decedent Karlie Hall, and the refusal to report, document, and/or investigate the incident and subsequent release of Gregorio Orrestieta enabled Gregorio Orrostieta to continue to freely enter the Millersville University campus, including its residential housing facilities such as Bard Hall, without interruption or further supervision created and exacerbated the foreseeable risk of harm to decedent Karlie Hall which ultimately left Karlie Hall vulnerable to the savage and brutal abuse of Gregorio Orrostieta in or around February 8, 2015.

127.    The affirmative acts of the Millersville Defendants, particularly responding to resident-students affirmatively seeking out Bard Hall Resident Assistant and Millersville University agent and employee, Sara Wiberg, to assist and/or save decedent Karlie Hall after confirmed reports of a physical altercation and multiple cries for "Help!", and the refusal to report, document, and/or investigate the incident after Millersville University Resident Assistant simply walked away enabled Gregorio Orrostieta to continue to physically assault and strangle decedent Karlie Hall, created and exacerbated the foreseeable risk of harm to decedent Karlie

Hall, absent the Millersville Defendants' unlawful and improper actions which ultimately left Karlie Hall vulnerable to the savage and brutal abuse by Gregorio Orrostieta in or around February 8, 2015.

128.    The Millersville Defendants acted with a degree of culpability that shocks the conscious by permitting an identifiable third-party with a known history of violence to have access to its dormitories, specifically the dormitory of a resident-student that was a known victim of Orrostieta's abuse, and subsequent misuse of authority when both in or around October 5, 2014 and more specifically the misuse of authority in or around February 8, 2015, when Bard Hall Resident Assistant and Millersville University agent and employee, Sara Wiberg, refused to respond, report, and/or investigate confirmed reports of a physical altercation and multiple cries for "Help!" by decedent Karlie Hall when resident assistant Wiberg had concrete knowledge of the history of prior domestic, sexual,, and/or dating violence by Gregorio Orrostieta on decedent and where Resident Assistant Wiberg, as an *appropriate campus security authority* had a legal duty and authority to investigate, respond, and/or report the incident, thus further creating and/or enabling the veracious and savage death of decedent Karlie Hall that would not have occurred but for the unlawful and/or misuse of state authority by the Millersville Defendants.

129.    There was a relationship between the Defendant and the decedent wherein Karlie Hall was a foreseeable victim of Defendant's conduct from dangers known or that should have been known to the Millersville Defendants.

130.    The harm facilitated by the Millersville Defendants' actions and inactions was foreseeable and a direct result of said actions and failures to act. Without the Millersville Defendants' actions, decedent Karlie Hall would have been free from the assault, abuse, and attacks of Gregorio Orrostieta that occurred in the care, supervision, and custody of the

Millersville University Defendants while Karlie was a resident-student in one of the Millersville University residential housing facilities – Bard Hall.

131.     The federal and state laws in addition to Millersville University laws, policies, and/or procedures provide decedent Karlie Hall an entitlement to receive protection from abuse in accordance with said laws, policies, and/or procedures and enjoyment of due process protection against state deprivation of that entitlement.

132.     Reasonable officials and/or persons in the Millersville University Defendants' positions would have been aware of decedent Karlie Hall's due process right to be free from such unnecessary and unwarranted intrusions upon her person.

133.     No reasonable officials and/or persons in the Millersville University Defendants' positions would have believed, in light of clearly established law, that their conduct comported with established legal standards.

134.     The Millersville University Defendants owed a duty of reasonable care to decedent Karlie Hall and to all other students at Millersville University who were the subject of reports and/or known instances of sexual, domestic, and/or dating violence and abuse known to Millersville University and to properly train and supervise its employees and appropriate campus safety authorities to report, investigate, and/or respond to said abuse.

135.     The Millersville University Defendants breached their duty to properly train and supervise members of the Millersville Police Department and residential housing employees, including but not limited to resident assistant Sarah Wiberg, to properly investigate, report, and respond to legitimate and concrete reports of sexual, domestic, and/or dating abuse made to the

26

Millersville University Defendants so that students, including decedent Karlie Hall, would not be harmed or killed as a result of abuse.

136.     The Millersville University Defendants misused their authority when it failed to investigate and report concrete knowledge and evidence of physical, sexual, and/or dating violence in or around October 5, 2014.

137.     The Millersville University Defendants misused its authority when it failed investigate and report evidence of physical, sexual, and/or dating violence in or around January 25, 2015 after the Millersville University Defendants had knowledge that the same individual involved in the October 2014 incident of physical, sexual, and/or dating violence was once again visiting decedent Karlie Hall at her Millersville University residence dorm.

138.     The Millersville University Defendants misused their authority when they permitted Gregorio Orrostieta to freely enter and stay as an overnight guest in the Millersville University Residential Housing Facility Bard Hall room 217 in or around February 8, 2015, having concrete knowledge of two prior physical, sexual, domestic, and/or dating violent assaults on decedent Karlie Hall at the same location.

139.     The Millersville University Defendants misused their authority by and through the actions of Resident Assistant, Sarah Wiberg, when she refused to properly and immediately report, respond, and/or investigate multiple bona fide reports of physical, sexual, domestic, and/or dating violence on or around February 8, 2015 when Bard Hard residents, and decedent's hall mates, reported to Sarah Wiberg reports of furniture moving, commotion, banging on the walls and floors, and screams for "help!" from decedent Karlie Hall.

140.     The Millersville Defendants misused their authority when they failed to follow its own statutory and legal obligations, as well as its own policies and procedures, designed to

protect decedent Karlie Hall, and failed to provide decedent Karlie Hall with the level of care and protection required by law, and comparable to that which was made available to other similarly situated resident-students required to live in the Millersville University Housing Facilities, including Bard Hall, under the care and supervision of Millersville University.

141.    Plaintiffs are entitled to an award of reasonable attorney's fees incurred in this action.

142.    Decedent Karlie Hall suffered severe physical injuries, loss of life, emotional trauma, monetary losses and other damages, as a direct result of the Millersville University Defendants' violation of her federal constitutional rights.

143.    The Millersville University Defendants' breach of these duties outlined above proximately caused decedent Karlie Hall's injuries and death.

## PENDENT STATE LAW CLAIMS

144.    This court has pendent jurisdiction over the subsequent claims alleged herein and arising under the laws of the Commonwealth of Pennsylvania, pursuant to the principals as stated by the United States Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 716 (1966), and Hurn v. Oursler, 289 U.S. 238 (1933).

## COUNT THREE – WRONGFUL DEATH
## PLAINTIFFS, JOHN J. HALL and JEANETTE A. HALL, as Administrators of THE ESTATE OF KARLIE A. HALL v. ALL DEFENDANTS

145.    Plaintiffs incorporate paragraphs one (1) through one hundred and forty-four (144) as if set forth fully herein.

146.    Plaintiffs bring this action on behalf of the beneficiaries under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. § 8301, and the applicable Rules of Civil Procedure and decisional law.

147.     Under the Wrongful Death Act, which exists only for the benefit of children, spouse, and parents, Karlie A. Hall left surviving her the following persons who may be entitled to recover for damages and on their behalf this action is brought:

    a.   John J. Hall and Jeanette A. Hall, Administrators to the Estate of Karlie A. Hall and decedent's parents, residing at 695 Bayard Rd, Kennett Square, 19348, in the Commonwealth of Pennsylvania and 18631 Belmont Dr., Cuttler Bay, Florida 33157, respectively.

148.     As a result of the negligent acts and omissions of defendants, Plaintiffs' decedent was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Wrongful Death Act.

149.     Plaintiffs, John J. Hall and Jeanette A. Hall, as Administrators of the Estate of Karlie A. Hall, deceased, claims all Administrators' expenses recoverable under the Wrongful Death Act, including, but not limited to, damages for hospital, medical, funeral, burial expenses, and expenses of administration necessitated by reason of injuries causing decedent's death,

150.     On behalf of the Wrongful Death Act beneficiary, the Administrators claim damages for monetary support that decedent would have provided to the beneficiary during her lifetime, including, but not limited to, the support provided or which could have been expected to have been provided to the beneficiaries.

151.     On behalf of the Wrongful Death Act, beneficiaries, the Administrators claim damages for services provided or which could have been expected to have been performed in the future by decedent.

152.     On behalf of the Wrongful Death Act beneficiaries, the Administrators claim damages for the loss of companionship, comfort, society, guidance, solace, and protection of decedent.

153.     On behalf of the Wrongful Death Act beneficiaries, the Administrators claim damages for all pecuniary loss suffered by the beneficiaries.

154.     On behalf of the Wrongful Death Act beneficiaries, the Administrators claim damages for the full measure of damages allowed under the Wrongful Death Act of Pennsylvania and decisional law interpreting said Act.

**WHEREFORE**, Plaintiffs demand damages against defendants, jointly and severally, in an amount in excess of Fifty Thousand ($ 50,000.00) Dollars, and in excess of the prevailing arbitration limits under the Wrongful Death Act, exclusive of prejudgment interest, post-judgment interest, and costs.

## COUNT FOUR – SURVIVAL ACTION
## PLAINTIFFS v. MILLERSVILLE UNIVERSITY AND SARA WIBERG

155.     Plaintiffs incorporate paragraphs one (1) through one hundred and fifty-four (154) as if set forth fully herein.

156.     Plaintiffs bring this action on behalf of the Estate of Karlie Hall, decedent and Plaintiffs' daughter, under and by virtue of the Pennsylvania Survival Act, 42 Pa.C.S. § 8302.

157.     Plaintiffs claim, on behalf of the Estate, the damages suffered by reason of the death of decedent, Karlie Hall, including the economic value of the decedent's life during the period of her life expectancy and additional sums in damages or reimbursement for medical bills, general costs, and other expenses incurred therewith, as well as the conscious pain and suffering the decedent underwent prior to her death.

158.     Plaintiffs further claim additional damages representing the physic value of the expectancy and enjoyment of the life of decedent, Karlie Hall, which was cut short by reason of the Millersville University Defendants' failure to prevent decedent Karlie Hall from being abused/assaulted o the point that she died, and other losses and damages permitted by law.

## COUNT FIVE – SURVIVAL ACTION, NEGLIGENCE PER SE
## PLAINTIFFS v. ACACIA NATIONAL FRATERNITY, ACACIA FRATERNITY LOCAL
## MILLERSVILLE CHAPTER NUMBER EIGHTY FOUR (No. 84), and the
## FRATERNITY MEMBERS

159.    Plaintiffs incorporate paragraphs one (1) through one hundred and fifty-eight (158) as if set forth fully herein.

160.    Plaintiffs bring this action on behalf of the Estate of Karlie Hall, decedent and Plaintiffs' daughter, under and by the Pennsylvania Survival Act, 42 Pa.C.S. § 8302.

161.    Under 18 Pa. C.S. § 6308, it is illegal for a person under the age of 21 to attempt to purchase, purchase, consume, possess, or transport alcohol.

162.    The section of the Pennsylvania Crimes Code was enacted with the intent to protect both minors and the public at large from the deleterious effects of serving alcohol to persons younger than 21.

163.    Pursuant to Pennsylvania Liquor Code Title 47 Section 491.1, it is illegal for any person to sell or offer to sell alcoholic beverages without a license.

164.    Accordingly, violations of these statutes would constitute negligence per se in a civil negligence action.

165.    Moreover, service of alcohol to a minor, let alone a visibly intoxicated minor, by any social host is negligence per se.

166.    Any adult who furnishes alcohol to a minor is liable as an accomplice under 18 Pa.C.S. § 306.

167.    It is believed and averred that Greogrio Orrostieta attended a party hosted by the Fraternity Members of the Acacia National Fraternity and/or Local Millersville Chapter No. 84, and located in a house on 351 North George Street in Millersville Borough, Pennsylvania.

168.     It is believed and averred that the Fraternity Members of the Acacia National Fraternity, and Local Millersville Chapter, No. 84 invited decedent Karlie Hall and Gregorio Orrostieta into the fraternity house and sold them alcoholic beverages in violation of 18 Pa. C.S. § 6310.1, 18 Pa. C.S. § 306, 18 Pa. C.S. § 6308, and Pennsylvania Liquor Code Title 47 Section 491.1, while Orrostieta was a minor and visibly intoxicated.

169.     Defendant Acacia Local Millersville Chapter, Number 84, a representative and affiliate of Defendant Acacia National, and Fraternity Members intended to furnish alcohol to Gregorio Orrostieta, a visibly intoxicated minor, did furnish alcohol to him, and acted in a manner that was *the* substantial factor in furnishing him this alcohol.

170.     Defendants actions are in direct violation of 18 Pa. C.S. § 6310.1, 18 Pa. C.S. § 306, 18 Pa. C.S. § 6308, and Pennsylvania Liquor Code Title 47 Section 491.1 and as such constitute negligence per se.

171.     Defendants had knowledge that Gregorio Orrostieta was obviously intoxicated at the time Defendants sold, served, and furnished Orrostieta the alcohol.

172.     Defendants, at the time they sold, served, and furnished the alcohol to Orrostieta, had notice of the possibility of violent conduct and subsequent harm from the actions of Gregorio Orrostieta on decedent Karlie Hall because the Fraternity Members of Defendant Acacia National Fraternity and/or Local Millersville Chapter No. 84 witnessed Orrostieta physically shove, assault, and pin decedent against a wall, but did not intervene; call the police; or otherwise assist decedent Karlie Hall by any means.

173.     Defendants' sale, service, and furnishing of alcohol to Gregorio Orrostieta while he was obviously visibly intoxicated and a minor was a proximate cause of decedent, Karlie Hall's physical, sexual, and domestic abuse at the hands of Gregorio Orrostieta.

174.     As a direct and proximate result of Defendants' conduct, decedent Karlie A. Hall suffered extreme physical abuse resulting in death.

175.     As a direct and proximate result of Defendants' conduct, decedent, Karlie A. Hall sustained domestic abuse, sexual assault, and ultimately loss of life depriving her of the full enjoyment of life's pleasures including engaging in recreational activities, hobbies and avocations, educational and employment opportunities, and lost wages and earning capacity.

**WHEREFORE,** Plaintiffs seek judgment against the defendants, jointly and severally, on each count, for an amount in excess of Fifty Thousand Dollars ($50,000), plus interests, costs and attorney's fees as appropriate, including 42 Pa.C.S. § 1988 attorney fees.

## COUNT SIX – SURVIVAL ACTION, NEGLIGENCE
## PLAINTIFFS v. ACACIA NATIONAL FRATERNITY, ACACIA FRATERNITY LOCAL MILLERSVILLE CHAPTER, NO. 84, and the FRATERNITY MEMBERS

176.     Plaintiffs incorporate by reference paragraphs one (1) through one hundred and seventy-five (175) of the Complaint as if set forth in full herein.

177.     Plaintiffs bring this action on behalf of the Estate of Karlie Hall, decedent and Plaintiffs' daughter, under and by the Pennsylvania Survival Act, 42 Pa.C.S. § 8302.

178.     Defendants Acacia National Fraternity, Acacia Fraternity Local Millersville Chapter, No. 84, and the Fraternity Members jointly and severally, were careless and negligent in the fulfillment of the duties owed to business invitees and/or guest such as decedent Karlie Hall by:

a.     Violating Pennsylvania Liquor Code Title 47 Section 141.1 by selling alcohol to visibly intoxicated minors without a license;

b.     Violating the Criminal Code of Pennsylvania by providing alcohol to visibly intoxicated minors under the age of 21;

c.     Failing to properly train its members on the safe and responsible use of alcohol;

d.     Failing to properly monitor the actions of its guests during social events;

e.     Failing to adhere to the Acacia codes of conduct including provisions regarding the use of alcohol and dealing with potentially hostile situations;

f.     Failing to ensure compliance with the Millersville University Code of Conduct;

g.     Serving alcohol without having any "TIPS" training and/or other training aimed at detecting when someone is visibly intoxicated;

h.     Knowingly providing a shelter for underage drinking;

i.     Failing to exercise reasonable care to discover that the property involved in this lawsuit was being utilized as a shelter for underage drinking;

j.     Providing a shelter for underage drinking with the knowledge that such conduct is likely to endanger the safety of those attending the party;

k.     Knowing that continuing to serve a visibly intoxicated minor alcohol, after having previously witnesses the same minor physically attack and assault another patron, poses an unreasonable risk of harm and danger to other invitees, including decedent Karlie Hall;

l.     Continuing to serve, furnish, and sell minor and visibly intoxicated Gregorio Orrostieta alcohol after having previously witnessing Orrostieta physically attack and assault decedent Karlie Hall

34

m.     Failing to rescue decedent Karlie Hall from the visible and actual dangers posed to her by Orrostieta as witnessed by members of Defendant Acacia National Fraternity and/or Local Millersville Chapter, No. 84.

179.    As a direct and proximate result of the negligence, carelessness, failure to rescue, and other liability producing conduct of defendants Acacia National, Acacia Fraternity Local Millersville Chapter, No. 84, and decedent Karlie Hall sustained domestic abuse, sexual assault, and ultimately loss of life depriving her of the full enjoyment of life's pleasures including engaging in recreational activities, hobbies and avocations, educational and employment opportunities, and lost wages and earning capacity.

**WHEREFORE**, Plaintiffs, as Administrators of The Estate of Karlie A. Hall, seek judgment against the defendants, jointly and severally, on each count, for an amount in excess of Fifty Thousand Dollars ($50,000), plus interests, costs and attorney's fees as appropriate, including 42 Pa.C.S. § 1988 attorney fees.

BRIAN D. KENT, ESQUIRE
Attorney ID No. 94221
Laffey Bucci & Kent, LLP
1435 Walnut Street, 7th Floor
Philadelphia, PA  19102
(215) 399-9255

Date:   January 17, 2017